Good afternoon. May it please the Court. My name is Daniel Kaplan. I represent the appellant, Larry Kent Walker. In this case, the government extracted a series of incriminating statements from Mr. Walker in the course of an interrogation conducted on November 10th of 2003. It was the last in a long series of interrogations, totaling six in all, that had been conducted over the course of seven or eight days, all but a couple of them having been taken while he was in custody. The government then used these incriminating statements obtained in this last interrogation, by far the longest of all of them, as the foundation to support a charge of first-degree murder and eventually a conviction for first-degree murder and a federal sentence. Because of serious errors and flaws in the way that interrogation was conducted, the way the incriminating statements were extracted, and the way the trial was conducted, however, that foundation of the confession cannot bear the weight which the government has placed upon it. The first of these flaws that I want to address is the district court's finding on the collusion between the federal agents and the tribal agents. Right. The district court made a clear finding that there was not collusion. And you do an excellent job of describing perhaps the basis upon which an alternative finding might have been made. Why should we disturb, though, or find clearly erroneous the finding that was, in fact, made that there was no collusion? Your Honor, there's something significant in the way the testimony was heard at the pretrial hearing, because you'll recall there was a several-day-long pretrial hearing on this issue. And the same individuals testified on the same issues at the trial. And an important thing to recognize is that what I really focus on in the brief is something that happened at trial, after the initial hearing. So it was not something that underlay the judge's initial ruling on that pretrial question. Agent Leach of the Bureau of Indian Affairs at trial made a much clearer admission than he had in the pretrial hearing that, in fact, on November 6th of 2003, when Walker was put in jail and was incarcerated from that point all the way through the November 10th when he gave the really damning confessions, on that day, November 6th, Agent Leach admitted that the BIA had the tribal officers out looking for him to arrest him, to put him in custody, so that they, the BIA, could then interrogate him on the federal murder charge. Wait a second. He said that he was aware that they were out looking for him. But then that doesn't necessarily sit well with his testimony or the fact that they both, both federal agents showed up thinking that he was at home when, in fact, he had already been taken into custody. I mean, doesn't that kind of undermine the notion that somehow everyone was working in tandem? Well, Your Honor, what it, it shows that they didn't, neither law enforcement agency knew exactly where he was. They were both looking for him. And, in fact, it is true that when a couple of federal agents were pulling up to, looking for him, they saw the tribal agents were arresting them. So they weren't literally out there working together, looking together. In fact, I think it's an even stronger case because of that. Because what we have is, if they had been working together, you might say the tribe was simply assisting the federal agents in arresting. And then when the arrest was done, they would have presumably arrested him for suspicion of murder. And it would have been his, his right to a presentment would have undoubtedly vested at that point. And they would know they had to take him before a magistrate within six hours. Instead, what we have is the BIA saying to the tribe, go out and arrest Walker. We know because you have this tribal warrant. And they testified they knew about the tribal warrant. And it wasn't for murder. They can't even charge murder at the time. They can only charge up to an assault. And they knew there was a warrant for illicit cohabitation, the crime of living with your girlfriend. So it's worse because the federal agents were not literally working hand-in-hand with the tribal agents to arrest them on a federal charge. They were telling the tribal agents, go out there and arrest them on your tribal charge. Alito. Where's that evidence, though? It's the testimony of, of Agent Leach at the trial. That, that he told them to go out and arrest him. What he said, I don't think he used the word told. He said, we had them looking for Walker on, on the understanding that they would arrest him on a tribal charge, and then we would interrogate him. And, and at the end of that, this is the cross examination, right at the very end of his cross examination at trial by the trial attorney for Walker. And at the very end of that. Could you just read the words from the excerpts of record? Your Honor, I have to excuse, I, U.S. Airways took my bag today, and I don't have the excerpts with me. But the citation in the brief cites the pages of the excerpts of record where that testimony is. And at the end of that cross examination. Are you talking about the, when he was, his memory was refreshed by the document? I think that's part of it, Your Honor. And at the end of the, he says that he, he had the tribe out looking for Walker that day, November 6th. And understanding that they would arrest him on the tribal charge, he would be incarcerated on the tribal charge, and the federal BIA agents could go and interrogate him on, on the murder charge. And at the end of that cross examination, at the very end, he says, well, he wanted him in custody to interrogate him on the federal charge because it was easier to have him in custody. It was more convenient to have him in custody than to have him out running around someplace. So that convenient word, it sounded to me like he was talking about geography there. Well, you can, the point is, perhaps he was talking about geography. The point is, Your to interrogate him on the federal charge, and they used the tribal agents essentially as their agents to make that happen in a way, it was understood, of course, in a way that would not seem to make his presentment right best. And, of course, that's exactly what, that's exactly what happened. He was incarcerated by the tribe on a tribal charge. But the same district judge who had made the ruling, the pretrial ruling, heard this testimony and didn't change his mind or make any other factual findings? Your Honor, at that point, there wasn't, they didn't, there wasn't any sort of motion made or there wasn't an attempt to reopen that issue. But it is clear on the record from what's, from what's added to the pretrial hearing evidence by the trial evidence that that issue had really changed. And so that, I think, looking at the record now, we can see that Walker's presentment right really was infringed by the way he was put in custody. And then, of course, the statute says you have a safe harbor if you're, if it's within six hours of being arrested on a federal charge to be brought before a magistrate. Well, here it was more than a month before he was brought before a magistrate. Of what significance is it that the motion was not renewed at that point? Your Honor, I don't, I'm not raising any special significance to that. I think that, as I said, I think the Court can look at the record and see the issue was certainly raised and preserved by Walker's trial counsel. And it was fully fleshed out to the extent the witnesses were able to address it at the pretrial hearing. But I'm saying what's added by the trial testimony allows this Court to see that preserved issue as actually having more merit than the trial judge. I think the significance of what was added at the trial is that it answers your colleague's question about why you can say there was clear error here when looking at the pretrial hearing, you might think that the judge's initial decision on that was acceptable. How could we say that the judge made a clear error when the testimony that he supposedly made a clear error about was not before him when he made the supposed error? The testimony comes later, but then he's not asked whether he would draw a different conclusion on collusion. Well, Your Honor, that's a fair question. I think that it's still clear from the record that there was an error made. It's simply because of the way the testimony developed that if you were to focus on only the initial ruling, I agree that it seems awkward to say that was a clear error. Of course, there are situations where an appeal court can find a clear error when looking at the circumstances within a particular – within which a particular ruling is made, it may be understandable. It's simply because of the way the testimony unfolded at the trial and how that, to some extent, went significantly beyond what happened at the pretrial hearing, that the record really supports this more than was apparent at the beginning. But I understand Your Honor's question. I do think, however, that this Court shouldn't ignore the sworn testimony given at trial that shows that, in fact, the circumstances under which Walker was put in custody four days before he gave those damning confessions that led to his conviction really did give rise to an infringement of his presentment right. And again, that issue was certainly preserved by the trial counsel in this case. Incidentally, does the collusion for purposes of Doe and Alvarez-Sanchez have to be collusion for purposes of delaying presenting the person to a magistrate, or can it be collusion for any purpose, like State Federal Task Forces or Federal Tribal Task Forces? Your Honor, the language in the case law describes it in the first sense you just described. The language in the case law talks about it's collusion for the purpose of denying a defendant their right to a prompt presentment. That's why I asked the question, because I was thinking that it has to be collusion for a bad purpose. Typically, State Police and City Police or Federal and State Police or Federal, State, and City, they cooperate in these drug task forces and other kinds of child pornography and these other things, and it's called cooperation instead of collusion because it's not for an unlawful purpose. In fact, Your Honor. And I'm wondering if the same thing is true here, that the State or the Feds and the Tribal authorities cooperate in order to find some person, but unless they collude to deprive him of a prompt presentment, I wonder if there's anything wrong with it. Not only is nothing wrong with it, Your Honor, it's a fine thing. The Supreme Court was very clear in Alvarez-Sanchez to say cooperation is a good thing. Sharing information is a good thing. And the example in that case was where the State had been after somebody for, I think it was a drug charge. They found some kind of forged instruments that implicated a possible Federal crime. They told the Federal authorities about it. Sharing information and cooperating is a good thing. To springboard off Judge Larson's question, if they were actually helping each other find Walker so that he could be arrested on a Federal charge, which is, of course, what everyone knew they were investigating, and the Tribes simply helped them find him so that the Feds could arrest him and bring him before a magistrate, that would be fine. That would be okay, too. It can't work. It can't work that way. The Tribe can't arrest for a Federal felony. Their authority is limited. Certainly. I'm suggesting the Tribe could help the Feds find him and, say, hold him temporarily and turn him over to Federal custody or simply say, we found him. Here he is. You can go arrest him now. Cooperation like that is absolutely fine. It's a good thing. Let's say it wasn't illicit cohabitation. Let's say it was a narcotics trafficking offense that the Tribal police were investigating and had a warrant on. Would there have been anything wrong once the Federal agents heard that the suspect of theirs for the murder was being arrested on narcotics trafficking charges and instead of interviewing him at his home, going to where the body was held or go to the police station? There's lots of cases that are like that, Your Honor. And in general, the courts do not find there was collusion. And they say that you can't speculate. What's the difference here? I mean, I understand that illicit cohabitating is not of the same seriousness of narcotics trafficking, and we don't have necessarily the most enlightening answer by the Tribal agent as to why it was that he brought the charge to begin with. But is that really our job or the district court? Well, there's a lot of distinctions here. There's a lot of facts to look at in context. One thing we have here is a Federal agent admitting on the stand, we had them looking for him because of our Federal charge we were preparing to bring. We had them looking for him to arrest him, to put him in jail in a way that would not allow his presentment right to attach, even though we knew we wanted him in jail, we were having him put in jail by somebody else so we could interrogate him on a Federal charge without honoring his right to be brought before a magistrate. There's other circumstances, Your Honor. The Tribe understood from the very beginning of this that this was a homicide investigation. They started coming up with justifications for putting Walker in jail from the very beginning that had nothing to do with anything like a homicide. First, it was for spilling soup on somebody, and then he was out on that. And then they came up with they also charged illicit cohabitation the same day they came to the scene of the crime or the scene where the body was and came up with something else to have him incarcerated. The nature of those charges and the way they were brought in connection with this homicide investigation also helps to show the circumstances that this was really collusion. And, of course, the trial counsel made a proffer showing that this was a pattern on this particular reservation, eight prior instances where the same pattern was, tribal incarceration on a tribal charge, followed by Federal interrogation, followed by a Federal charge. But the point is... I think that's the way it always works with all reservations, isn't it? The FBI usually has very limited manpower and doesn't know how to find the individual Indians anyway. There's always something that the tribal police can think of, and they arrest the Indian for that, put them in the tribal jail, then the Feds take the case and the tribe drops the misdemeanor charges. I mean, I've seen lots of cases just like that, and I thought that's how they cooperated lawfully. Your Honor, if they're cooperating when the... If they're... Well, okay. I don't know the answer whether it happens that way on all the reservations. But the point is that the pattern shows, and the facts in this case show, that the tribal charge, which is the justification for the incarceration, is pretextual. Okay? In this case, the Federal agent admitted that he had them arrest the guy in support of an existing Federal... Sure, it's pretextual, but was it to deprive him of prompt resentment? I mean, obviously, illicit cohabitation is pretextual. Under Wren, police pretexts are okay, under the Supreme Court decision in Wren. What I need is not pretext, but collusion to deprive the man of prompt resentment. Well, the collusion stems from the fact that it was understood that the arrest was, in fact, pretextual. I don't agree that pretext in this context is acceptable, because the Supreme Court said if we had a case, essentially they said like this, in Alvarez-Sanchez, if we had a case where we believed that the evidence showed that the state, same principles apply to a tribe, arrested somebody just to facilitate a Federal interrogation in a way that would not allow resentment rights to seem to attach, we would support the idea that the clock should start ticking, the six hours should start ticking under Section 3501. So I think the Alvarez-Sanchez case says that pretext in this context is not acceptable. I do think it's important to talk about the testimony of Dr. Richard Leo. You're aware that Dr. Leo would have testified on the phenomenon of false confessions. This was obviously the central issue in this case, given the importance of Walker's confession to his conviction, and the judge kept putting off looking at the issue of false confessions and finally said there's no tie-in between Leo's theories of interrogation and the record in this case and the interrogation in this case. Well, there really are a lot of tie-ins, and the testimony of Agent Coy of the FBI clearly shows what those tie-ins are. Leo talks about telling someone that basically they don't have any chance of escaping conviction, that the physical evidence shows they're guilty, telling them I don't believe you, whatever they say, using a polygraph exam, and then saying you're not doing very well, you're failing the polygraph, and then the technique of minimizing and creating your wife's daughter take a bath. Maybe you were just helping her use the potty when you touched her in a certain way. Maybe you were just giving the discipline when you hit her in the head a certain way. He used all these techniques that Leo, or a lot of these techniques that Leo talked about, and it simply was not accurate for the court to say that there was no basis for allowing Leo to testify, and it went to the heart of Walker's defense and should have been admitted. We believe that was reversible error as well. I'm going to reserve the balance of my time. Thank you, Counsel. Good afternoon. My name is Anne Shalen. I'm an Assistant United States Attorney for the District of Arizona. There is absolutely no evidence in this case that federal and tribal authorities colluded unlawfully to deny the defendant his federal rights. The defendant specifically relies on one portion of Agent Leach's testimony, which can be 346 and 347. And if the court would like me to read that, I'd be happy to. Assistant Lawyer says that you had the tribal police looking for Walker. Answer yes? Yes. And it's clear that at the end of that testimony, Agent Leach says it would be more convenient. Defense counsel asks him, that would be more, and that would be a more advantageous situation in which to question. And Agent Leach only replied it would be more convenient. Well, what do you make of the question on redirect when the court is asking, or he's allowing Leach to, his memory to be refreshed? And the question is, can you tell us now what you wrote that day? Answer, do you want me to read it or just basically, or basically it just says, we have tribal charges warrants against the, and the tribal police are helping us look for the mother and her boyfriend. I don't believe that that shows collusion. It was clear from the agent's testimony that tribal police were helping BIA officers look for defendant Walker, because BIA intended to interview him again. The testimony from Agent Moran, who was the case agent in the case, clearly stated they often ask tribal police to help locate individuals on the reservation, because as the court has stated, it's very difficult to locate those individuals, and the tribal police have the knowledge to locate them. Right. So the question is, and you had the tribal police looking for Walker? Yes. So you knew that if the tribal police who had a warrant found Walker, they were going to arrest him? Yes. And then you were going to question him? Yes. And if they found him, they would have told us that they found him? Question. And then you were going to question him? Answer, yes. I mean, the implication from that is, they call the tribal police and say, do you have anything you can get Walker on? We'd like to question him in jail, and you're going to pick him up for some charges. Because they just released him on the soup charges. Well, the soup charges happened on the day that the child was found dead, on November 3rd. He was arrested after he'd voluntarily come to the BIA office and answered questions. After that, he was released the same day, if the testimony is during the defendant's testimony, that he was released the same day. Officer Savage, who was the tribal officer on the case, specifically testified that he was never told by any federal agent to arrest the defendant, nor did he arrest the defendant to help the agents question the defendant. He also specifically testified that the warrant that he was arrested for on November 6th was not only for illegal cohabitation, but also for what's called permitting a child's life, which is basically child endangerment in the tribe. So it was on two different charges. Do you have any idea how Agent Leach would have found out any of this information, or what the circumstances were surrounding the communications between the federal and the tribal agents? Well, I think that Agent Moran has testified that they often would use the tribal police to locate individuals. How Agent Leach knew about the tribal arrest warrant on the November 6th, I don't know. But that's in the record, is it? That's not in the record. But Agent Leach also testifies specifically that he has no authority to execute a tribal police act separately. Judge Kleinfeld has a question. Yes, I do. Thank you. Counsel, let's hypothesize that the feds, the BIA person, Leach, had the tribal police arrest Walker on a pretextual tribal charge in order to facilitate federal interrogation of Walker. Assume that for purposes of the question, is that enough under the law for collusion that starts the clock running at the time of that arrest for purposes of prompt resentment? Or does the purpose have to go further and include the additional element that the reason for having the tribal police do it was to delay presentment until after more time for interrogation? I think the case law is clear that the defendant has to show that federal law enforcement asked that the defendant be arrested for the purpose of denying him his federal rights. In this case, for... Which language should I look at in which cases? I believe that... I'm sorry, Your Honor. I believe that... What I looked at in preparation, it had everything sort of mushed together in one long phrase, and I'm looking for something that separates it out enough so that it'll be really clear, clearly and decisive on my hypothetical. I believe the Michaud case, United States v. Michaud, specifically says that in that case, the defendant argued that her statement should be suppressed because federal and state authorities colluded to deprive her of her federal rights under Criminal Rule 5A regarding prompt resentment, and this Court found that she had not proven such collusion. Right. It often comes down to question of proof, but I think, and maybe I didn't hear your answer to Judge Kleinfeld's question, if it is shown that federal officers direct a pretextual arrest for the purpose of delaying presentment so they can interrogate over an extended period of time, days, you would agree that if such proof were made and found by the district court, that would be improper collusion and the statements would have to be suppressed, theoretically, hypothetically, not this case? If the federal authorities asked either state or tribal authorities to arrest the person for the sole purpose on a pretextual --. Pretextual. That was Judge Kleinfeld's hypothetical. The sole purpose of interviewing and depriving that individual of his right to an attorney or prompt resentment to obtain an attorney, that would probably be unlawful collusion. So you think it would be a per se exclusion as opposed to a further inquiry to see if it was a voluntary statement? If it was a voluntary. I think, well, I'm unclear about whether or not that's a specific element that the court looks to determine whether or not that statement's involuntary. The question of whether someone's been presented promptly and before a magistrate, Judge, you would move? Is it one factor that we would look to or are there other factors that we should look to as well to determine if the statement was voluntary, notwithstanding the collusion? I think in any case where a defendant's statement, voluntariness is an issue, the Specifically, in this case, the defendant keeps alleging that the arrest by the tribal police was pretextual, and I would dispute that. Right. I don't think there's any evidence of that. No, but if assuming for the sake of a hypothetical question that the arrest was pretextual, how would you think that plays out in this case in terms of the legal analysis? I mean, if there's a district court finding that, let's say that the district court found that the arrest was pretextual and it was made for the purpose of allowing the federal agents to interrogate this person in custody beyond the six hours safe harbor required for presentment. If those, hypothetically, if those were the district court findings, you'd have to say that the district court's conclusion of law that his federal rights hadn't been violated would be an error, right? Hypothetically. It's very hard to talk hypothetically with regard to this case, specifically because the defendant is only complaining about the admission of his November 10th interview, which in that case, he had been interviewed, I believe, on November 7th and invoked his right to silence. I'm just confiding to the presentment right. I think that's one of the elements the court would look at, but in this case, I don't think you can separate it because in this case, the defendant was taken into tribal custody. He was attempted, law enforcement tried to interview him on, I believe, November 7th. He invoked his right, or maybe it was November 8th. I'm confused now on my dates. He invoked his right to silence. They immediately returned him to the tribal jail. Right, so he's confined under, if you believe the defendant's theory, under federal, under pretextual circumstances so that you could coerce a confession. I mean, if you assume that there is pretext to begin with, the analysis changes, doesn't it? I guess that's what I'm driving at. I think it's another factor the court would look at. I think in this case, though, the fact that the defendant asked not once but twice to see federal law enforcement to talk to them about the murder of this child, I think the court then looks past that and looks to the circumstances surrounding the November 10th interview, which are clearly not involuntary. The defendant made the request and went over his request to speak to them several times to make sure he understood that. I believe that on the 7th, he invoked. On the 8th, he asked to speak to law enforcement. BIA officers spoke to him then. He agreed to take a polygraph at that time. A polygraph was given on November 10th. Prior to his November 10th polygraph, he again waived his rights to an attorney, understood. And by that November 10th date, the defendant testified he'd already been convicted. I assume he pled guilty and had been sentenced in tribal court. Counsel, let me get you away from voluntariness for just a moment and back to presentment. I'm trying to distinguish the situation. To me, an arrest for cohabitation looks kind of pretextual this day and age. And I've never seen anything that suggests that the Indians on this reservation are any different about that. And so to me, an important question here is if the police, if the feds act with a purpose of having the tribe arrest Walker, just so he can be found and interrogated conveniently, that's one thing. If the feds get the tribe to arrest Walker so that they can build in a few days delay before presenting him to the magistrate, that's another thing. The first is okay. The second is not okay. But I'm not sure I'm right about that. Does Michaud make that right? Or is there other law that makes it clearer? I believe Michaud stands for the point that if a defendant is arrested on other charges besides federal charges and in Michaud, the defendant was alleging that the federal authorities were trying to avoid the prompt presentment. The court found that there was no evidence of that. It's a matter of proof, though. It is a matter of proof. But it's a matter of proof in this case that there is no evidence to support the defendant's position. That there was collusion. Right. But isn't that what we end up, at the end of the day, is assessing the district court's findings? I mean, because getting back to Judge Kleinfeld's original hypothetical, if we assume that there is pretext and his right to prompt presentment is violated, the district court was in error, don't you think? That's hypothetical. It's not that you aren't conceding anything. I'm just trying to analyze the case. I think that it could be error. The defendant or the court's findings could be error. Unfortunately, I think in this case, there is no pretext. Again, it was the defendant. The best evidence for you is you've got the tribal officials saying we weren't instructed. The officers said they weren't instructed. On the other side, we have the trial testimony, others indicating that we had the tribal officers looking for them. And we just have to examine the record for what it is. But I think that the evidence is that we have the tribal authorities helping us look for him is different than we have the tribal authorities helping us look for him so they can arrest him, so we can question him and deny him his federal rights. I think that's a huge jump that isn't supported by the record in this case. Perhaps. But he said they were picking him up. You're going to arrest him, yes, question. And then you were going to question him, yes. If they found him, they would have told us that they found him, question. And then you were going to question him, answer yes. I mean, I understand your position. I understand the defense position. But there is evidence to support the defense position. Well, I disagree because I don't think that the evidence is that they were going to question him for the sole purpose of denying him his rights or that they were asking, or they ever asked the tribal police. Which rights are you talking about? You've repeatedly used the phrase denying him his rights without saying which rights. His rights. I was particularly focusing on presentment. But some of the other questions have focused on coercive confessions and that sort of thing. And I don't know which rights you're talking about. I believe it's the right to prompt presentment, which, in turn, gives the defendant the right to an attorney, which invokes his right, his Fifth Amendment rights. Do you care to respond to the counsel's arguments concerning the voluntariness, particularly in the context of the techniques that were used for the interrogation? With regard to the techniques that were used, with regard to voluntariness or with regard to their ex-for-witness, Dr. Leo? I think you're talking about Dr. Leo. Pardon me? I think he was wrapping up in terms of Dr. Leo's testimony and the exclusion of that. Well, specifically with regard to the techniques that the defendant's alleging being used, it's clear by this Court's rulings in past cases that many of those techniques, if they were even established, are not, have not, have been deemed not to be coercive, specifically. In this case, the court found that Dr. Leo, there had been no foundation and no relevance established for Dr. Leo's testimony. The court found that the techniques that Dr. Leo allegedly, or that wrote about in his writings, and we had no report from Dr. Leo specifically about what his testimony would be, were not found in this case, and the defendant had never established the foundation for that testimony. For example, one of those elements, or one of those coercive techniques that the defendant alleged was confronting an individual with their polygraph results. The testimony from this defendant, on his own, was that he had to ask the agent what the polygraph results were. He did not, he was not confronted with those in any kind of confrontational manner. With regard to the use of Dr. Leo, there was no basis for his testimony, and in this case, Dr. Leo was well-equipped to testify on his own behalf with regard to the falseness of his confessions that were written and submitted into court. And specifically, the jury was able to make a determination of if any of those statements were false, and they did so by acquitting the defendant of one of the sexual abuse count. If there are no further questions, I would ask that this court affirm the judgment of conviction. Any further questions? Seeing none, thank you. Thank you. Your Honor, I want to get back to the issue of the pretext and what exactly has to be shown. There is a treatise that talks about this body of law and says that essentially the standard that's been created by the courts has rendered it more or less of a nullity because essentially the decisions seem to require testimony saying we admit we conspired to deprive somebody of his Federal rights. And if indeed that's going to be the standard that the Court will apply, the doctrine declared by the Supreme Court many years ago and reaffirmed consistently by this Court and by the Supreme Court will indeed be a nullity and beyond that a farce. The test the only thing you could really add to the evidence here and say is missing is the agent saying not only everything I just said about how we had to try about looking for him to arrest him on a tribal charge that was pretextual so that he would be put in custody so that we could go and interrogate him on a Federal charge without stopping right there. The only thing you could add or require beyond that is the agent saying, and yes, of course, we did it that way because we wanted to deprive him of his Federal presentment rights. That was the whole idea. But you don't need that, Your Honors. It's very clear that the Federal agents, unless they're astoundingly ignorant of the law and the law that they deal with consistently in their dealings with the tribe, because that's the beat that he had, understands that that's the effect of having the tribe go and arrest him on some bogus charge instead of simply arresting him on the charge they all know they're getting ready to bring. He understands that. Counsel, I can't buy either half of that particular argument. I can't buy the part that says the doctrine is nullity unless you get a confession by the Federal agents that their purpose was to delay presentment, because that can be inferred from circumstantial evidence. There may well be cases where somebody has danced around from one custody and one and it's obvious from the circumstances that delay in presentment is what was wanted, no matter what the authorities claim. And I also can't buy the other half of the argument, that that was obviously the only purpose here. The Feds can't make an arrest on the reservation. Their authority is limited and their knowledge is even more limited. They pretty much are at the mercy of the tribal police to go and catch people. And so it's always going to be kind of a one-two, followed by a dismissal of the tribal charges or else a coordinate prosecution of them. So I can't buy either half of that. And I don't understand why we're supposed to infer that the purpose here was just to delay presentment as opposed to a purpose of catching a guy. And he might be hard to catch. I think he lived in a shack behind his father's house. Didn't even have his own address. Your Honor, I agree with the first part wholeheartedly. The circumstances should be enough to infer that there was collusion. And I think even taking away the testimony of trial of Leach, you have enough circumstances to do that here. As far as the second thing you said, I don't believe that's accurate. I think that the Bureau of Indian Affairs can arrest somebody. I don't know whether there's special difficulties that arise when somebody is physically on the reservation. But I haven't seen any suggestion in this record that the federal government somehow didn't have the ability to arrest Walker on a federal charge for something, for conduct committed on the reservation, which is eventually what they did. I don't know the mechanics of how that was done, but eventually on December 11th, over a month after he was arrested on the protectional tribal charge, they did charge him federally and they did take him into federal custody. And then a month or more after he should have had it, he had his right to presentment observed by the federal government there. So I don't think that that's accurate about what the BIA can or can't do. And of course, actually it was the FBI that committed, that conducted the final interrogation that led to the real confession here. Let me follow up with a question I think initiated by Judge Larson. Let's assume that there was a denial of the right to presentment in this case, all right? Is that the end of it? Or do then we have to further analyze whether we take that into consideration and analyzing the voluntariness of the confession? Your Honor, that is the end of it. And I'll point to several sources for that. The Alvarez-Sanchez case, the Supreme Court said that they have always held that a confession should be suppressed if it's the product of improper collaboration. If you find improper collaboration, and again, that's a collusion, a cooperation in this Court's words in Doe to deny someone a federal presentment right, that in itself should be grounds for saying the confession should have been suppressed. And because the confession was so central, that can't be harmless error. The conviction should be reversed. I also point to 18 U.S.C. section 3501C. If you look at that section of the statute, it specifically separates out a finding of voluntariness from the issue of how long the delay in presentment was. It doesn't say if there was a delay in presentment, you go on and look at the issue of whether there was voluntariness. It says these things stand on their own merits independently. Interestingly, the Michaud case, which the government referred to, in that case, the defendant raised an issue of collusion and didn't even challenge voluntariness. And the Court didn't say, why are you bothering us when you don't challenge voluntariness? I'm sorry, counsel. What Supreme Court case were we referring to? Alvarez-Sanchez. Didn't Judge Justice Ginsburg specifically concur and write separately to emphasize that they were not deciding the question on which the courts of appeal remain divided, namely, the effect of section 3501C on confessions obtained more than six hours after arrest on Federal charges? Yes. That's not okay. That's not what I'm referring to. There is a portion of the Alvarez-Sanchez decision where the Court says, if we find that the confession was the product of an improper collaboration, then we would say the confession should be suppressed. Ginsburg was talking about the statute says there's a safe harbor up to six hours. It doesn't say what happens after six hours. And that that's left for further construction. And this Court has construed, has introduced a number of principles and public policy and how unreasonable the delay is and so forth. But that's a separate issue. Does that — I'm sorry. Does that answer your question? The Michaud case, the defendant challenged and argued collusion, and the Court treated that as an independent freestanding issue to determine whether the conviction should be affirmed. She said, I'm not — she didn't even challenge voluntariness. And again, the Court treated that as a freestanding issue to examine. And in the Van Poyck case, this Court said that looking at the question Judge Larson is raising about what to do after six hours, you look at factors, and one factor you can look at is reasonableness, and another thing you can look at is public policy. And in the list of public policy concerns, this Court in Van Poyck says the — the need to avoid involuntary confessions is just one factor among many. So again, in Van Poyck, there's further evidence that voluntariness is not something you have to go on and show was lacking to reverse a conviction where there is collusion that leads to the securing of a confession which is used against the defendant. I think I may have missed this on the record, or at least I don't recall it right now. I know the timeline with respect to this questioning on several days after he was arrested. Was he kept in tribal jail for the entire period before the federal indictment or not? I believe he was, Your Honor. I believe he was, but I'm not certain of that. Okay. He was kept in tribal jail certainly from — I know. Through the interrogation. Six through — 11-6 through 11-10, and then the federal charge. The federal charge, though, right? Pardon? When was he released? Well, he was put in jail on the — let's see. He was arrested — he was arrested first on the soup spilling charge. Right. But then he was released. So that was on the 3rd. On the 6th. That's right. He was arrested on the 3rd as he walked out of the office of Agent Moran. They were waiting in the lobby for him. They arrested him on the soup spilling, and they let him out, I believe, was the next day. I think he testified it was the same day, but there's other evidence it was the next day. So he was in jail for about a day on the soup spilling. Then he was out from the 4th or the 3rd to the 6th. And the 6th is when the tribe, at the direction of the BIA, arrested him on the illicit cohabitation, which they came up with on the scene on November 3rd. So then he speaks with the federal authorities on the 7th and the 8th, and then the polygraph's given on the 10th. Right. Okay. And then they conclude — the FBI, at that point, appears to have concluded its investigation. The indictment is about a month later. Do we know what happened in between? I do not know what happened in between. And was he ever — were the cohabitation charges ever pressed in federal — in tribal court? I think Walker testified he was sentenced to 90 days for cohabitation. Okay. So he may have been serving that through the entire time before the federal government finally charged him on the actual homicide charge. Okay. Any further questions? No. Okay. Thank you, counsel. Thank you. The case is here to be submitted, and we'll proceed to the last case on the oral argument calendar.
judges: Kleinfeld, Thomas, Larson